## Case No. 15,778.

UNITED STATES v. MILWAUKEE & ST. P. RY. CO.

[5 Biss. 410.] [1]

Circuit Court, W. D. Wisconsin. Sept., 1873.

BRIDGES—AUTHORITY TO REGULATE CONSTRUCTION—NAVIGABLE WATERS—LEGISLATIVE POWER.

1. Congress has authority to regulate or prohibit the construction of bridges across the Mississippi river.

2. It can also delegate that authority to one of the chiefs of the department.

3. The United States has the right to prevent their construction otherwise than as prescribed by congress, and the federal courts have jurisdiction for that purpose.

4. The acts of congress of April 1, and June 4, 1872 [17 Stat. 46, 215], construed.

5. Under these acts the secretary of war had the right to determine whether the construction of a bridge at a given point would seriously affect the navigation of the river and to declare that a bridge should not be there built.

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

6. This being a legislative power, the judicial department of the government will not interfere with it.

7. Though the disapproval of a particular location by the secretary of war may not be in technical form, it will not therefore be ignored by the court.

This was a suit in equity brought to enjoin the defendant from building a railway bridge across the Mississippi river, in the vicinity of La Crosse.

The bill alleges that the Mississippi river is a navigable, public river; that congress has assumed control of its protection and improvement, and of the matter of constructing bridges across it at that place; that congress has conferred certain duties and authority upon the secretary of war in reference to locating bridges across said river, and has appropriated, from year to year, large sums of money for the protection and improvement of the navigation of the river; that the defendant is engaged in constructing a bridge across said river, which interrupts and obstructs its navigation; that the secretary of war (being thereto duly authorized by the laws of the United States) has disapproved of the construction of a railway bridge at the place where the defendant is prosecuting said work, and has determined that due regard to the security and convenience of navigation, and to the convenience of access and the wants of other railways crossing said river, will not permit the building of said proposed bridge; that the defendant heretofore located its bridge at the point where it is now engaged in building it, and submitted its location to the decision and approval of the secretary of war, and that the secretary of war disapproved of said location; that the building of said bridge by the defendant, is without authority of law, and contrary to the decisions, regulations and determinations, duly made in the premises, of the secretary of war, and is in direct and flagrant disregard of the statutes of the United States in that behalf made and provided, and that the construction of said bridge will result in direct, lasting and irremediable injury to the navigability of said river, to the commerce being conducted thereon and to the works of improvement being there carried on by complainant. The bill prays for a temporary and also a perpetual injunction. The complainant's counsel read several affidavits upon the hearing, showing that the defendant was engaged in building the bridge as alleged, and also read a copy of the proceedings of the secretary of war in reference to the location of the bridge.

The defendant filed its answer, setting up at length the legislation and proceedings of the secretary of war in reference to the construction of the bridge, and alleging that by virtue of the legislation of the states of Wisconsin and Minnesota, and of the act of congress of April 1, 1872, it is authorized to erect and maintain a bridge across the Mis-

sissippi river upon the site by it selected. Defendant denies that the work interrupts or obstructs the navigation of the river, and also that the secretary of war disapproved the location of the bridge made by the defendant. With its answer, the defendant produced numerous affidavits to show that the bridge being built by it would not materially obstruct navigation, and that it would not be more of an obstruction or more injurious to navigation than it would be if located at the foot of Mount Vernon street, the point designated by the secretary of war.

The acts of congress touching this matter are "An act to authorize the construction of a bridge across the Mississippi river, at or near the town of Clinton, &c.," approved April 1, 1872 (17 Stat. 46), and "An act further regulating the construction of bridges across the Mississippi river," approved June 4, 1872 (Id. 215).

Application for preliminary injunction on bill and affidavits.

W. C. Webb. U. S. Dist. Atty., J. C McKinney, and H. S. Orton, for the United States.

Decision of secretary of war on subject is conclusive. Kendall v. U. S., 12 Pet. [37 U. S.] 618; Decatur v. Secretary of Navy, 14 Pet. [39 U. S.] 573; Gaines v. Thompson, 7 Wall. [74 U. S.] 347; Secretary v. McGarrahan, 9 Wall. [76 U. S.] 298; U. S. v. Wright, 11 Wall. [78 U. S.] 648; U. S. v. Adams, 7 Wall. [74 U. S.] 463; U. S. v. Wright, 11 Wall. [78 U. S] 648; Works v. Junction R. Co. [Case No. 18,046]; 39 Eng. Law & Eq. 553; Wilcox v. Jackson, 13 Pet. [38 U. S.] 498.

Congress has exclusive power to legislate, and when exercised, all parties must conform. Wilson v. Blackbird Creek Mach. Co., 2 Pet. [27 U. S.] 245; 13 How. [54 U. S.] 578; U. S. v. New Bedford [Case No. 15,867]; Gilman v. Philadelphia, 3 Wall. [70 U. S.] 713; U. S. v. Railroad Bridge Co. [Case No. 16,114]; Columbus Ins. Co. v. Curtenius [Id. 3,045]; Ang. Water Courses, 555; Gibbons v. Ogden, 9 Wheat. [22 U. S.] 1.

The government has the right to maintain suits in equity for injunction on such cases. U. S. v. City of Duluth [Case No. 15,001].

J. W. Cary and Gregory & Pinney, for defendant.

The United States has no right to authorize bridge. Wheeling Bridge Case, 13 How. [54 U. S.] 583; Gilman v. Philadelphia, 3 Wall. [70 U. S.] 713. If bridge is not an obstruction in fact, no injunction can issue. The question, therefore, is, will the bridge be a nuisance? Mississippi & C. R. Co. v. Ward, 2 Black [67 U. S.] 485; Barnes v. City of Racine, 4 Wis. 454. Statute of Wisconsin has conferred right to build bridge (Laws 1872, c. 119, § 10, subd. 5) and the state of Minnesota has given its consent by special act.

Decision of secretary not final nor conclusive. Lindsey v. Hawes, 2 Black [67 U. S.] 554; Garland v. Wynn, 20 How. [61 U. S.] 6.

DRUMMOND, Circuit Judge. The bill asks for an injunction in this case, because the defendant has commenced a bridge across the Mississippi river, and a navigable slough of the same, about two miles above the city of La Crosse. and has placed materials there which obstruct the navigation.

When the defendant fixed upon that point for the construction of a bridge, the secretary of war was duly notified, and after hearing the parties fully upon the subject, disapproved of the construction of a bridge there. The secretary of war decided that a due regard to the security and convenience of navigation, and convenience of access and wants of other railways crossing the river, would not permit the building of a bridge at that place, and therefore disapproved of the same.

The principal question is, whether the secretary of war had the authority to declare that the bridge should not be built at the point where the defendant proposed to build it, and this depends upon the construction of the acts of congress of the 1st of April, 1872, and of the 4th of June of the same year, authorizing and regulating the construction of bridges across the Mississippi river.

The Mississippi is a great national highway, the navigation of which is free to all citizens of the United States. If bridges are to be thrown across it, there can be no doubt of the authority of congress to declare that they should be so constructed as to impede in the least possible degree the navigation of the river; or to say how many shall be constructed; or to prohibit their construction altogether. This authority grows out of the national character of the river, as a great navigable channel of travel and of commerce. It follows from this that congress can prescribe the place and the manner of construction, so as not to interfere with the navigation, and when congress has legislated as to the construction of bridges on the Mississippi, within certain limits, and declared the mode of construction, they can only be built in the way pointed out by congress. Therefore, if any individual or corporation attempts to construct them otherwise, or elsewhere, then congress has directed, the United States must have the right to prevent it: and there is no doubt that this can be done through the civil process of the courts.

Then what terms has congress prescribed for the construction of the bridge proposed to be built by the defendant in this case? They are contained in the acts of congress already referred to. The first section of the act of April 1, 1872, authorizes the construction of a bridge across the Mississippi river at such point on the river within 15 miles of the town of Clinton, in the state of Iowa,

as may accommodate the Chicago, Burlington & Quincy Railway, and its connections on the west side of the river. And this section contains various directions as to the manner in which the bridge is to be constructed; and, also, several provisos, one of which is that it is not to interfere with the bridge already constructed at Clinton; and another is that it shall not be considered such interference provided it is necessary to cross the approaches to that bridge.

The second section of that act also declares still further in what manner the bridge shall be constructed, whether it is to be a drawbridge or a bridge without a draw, the space between the spans, the width of the draws, and various other matters connected with the bridge. The third section declares that a bridge constructed in the manner pointed out in the previous part of the law shall be a lawful structure, and shall become a post route. The fourth section provides that when a bridge has been constructed in the way pointed out, different railway companies may use the bridge and its fixtures and machinery, upon such terms and conditions as shall be prescribed by the secretary of war, provided the parties cannot agree among themselves. Then follows the fifth section, which has been so often referred to in the argument. That declares "that the structure herein authorized (obviously referring to the construction of a bridge at a point on the Mississippi river within fifteen miles of the town of Clinton) shall be built and located under and subject to such regulations for the security of navigation of said river as the secretary of war shall prescribe."

The first section declares where the bridge shall be built, and for what purpose. It was to accommodate the Chicago, Burlington & Quincy Railway, and its connections on the west side of the river. Undoubtedly the secretary of war was subject to the conditions contained in the first section—he could not go beyond them. But the fifth section contains a qualification of the terms and conditions in the first section which the secretary of war was to see should be carried out. They were, that while it was to be constructed for a particular purpose, it should be so constructed that the security of navigation of the river should not be interfered with.

And therefore it became the duty of the secretary of war, under this fifth section, when the question was presented to him of the construction of a bridge at a particular place, as stated in the first section, to see that it should be so constructed as to preserve the navigation of the river.

That being so, I think we are enabled to construe the remainder of this law. The sixth section authorizes the Muscatine & Western Railroad Company to construct and maintain a bridge across the Mississippi river at the city of Muscatine in the state of Iowa. This bridge was to be constructed according to the terms and conditions contained in the previous parts of this law, subject to them in all respects; but of course only so far as the language made the case applicable. As to this, and as to the seventh and eighth sections, that part of the first section which refers to the Clinton bridge would not be applicable.

Then, as to the bridge authorized to be constructed at Muscatine, the fifth section applied to it, and while the section limited the construction of the bridge at Muscatine, still the secretary must see that it should be so constructed that the navigation should not be impaired or affected.

Then the seventh section, which refers to the construction of a bridge between the counties of Carroll and Whiteside, in the state of Illinois, and the counties of Jackson and Clinton in the state of Iowa, uses this language: "That a bridge shall be constructed and maintained at any point that these companies may select." And the same language is used in the eighth section, which particularly refers to this defendant, and authorizes the construction of a bridge between the county of La Crosse, in the state of Wisconsin, and the county of Houston, in the state of Minnesota. But in both these sections the construction of the bridge in each case is subject to all the terms and requirements contained in the foregoing sections of the act.

Then the question is, how far the fifth section affects the eighth section, and whether it was intended by the law-makers that, in authorizing the bridge to be constructed between the county of La Crosse, in Wisconsin, and the county of Houston, in Minnesota, the secretary of war was to determine, as to the construction and the location of the bridge whether the point that they selected would interfere seriously with the navigation of the river, and so had the right to declare that the bridge should not be constructed there.

There is an apparent conflict between this section and the fifth section, provided we construe the word "locate" in the fifth section as meaning what in its popular sense it is supposed to mean, the placing of the bridge at a particular point on the river. But we think that the fifth section must be construed as qualifying the seventh and eighth sections precisely in the same way as it qualified the first section, and that it meant to say, "You can construct your bridges at such points as you may select, subject to the power or authority of the secretary of war to decide whether that point is such as to seriously affect navigation of the river, and if it does, that he shall have the right to say that the bridge cannot be constructed there."

Congress, as has been said, would undoubtedly have the right to declare where the bridge shall be constructed. Having that right, it can delegate the authority to one of

the chiefs of a department, and confer upon him the right, and that we think it has done in this case.

The individual or the corporation constructing a bridge has his or its own interest alone to consider in the construction, but the secretary of war, as representing the United States, has to consider other interests—First, the navigation of the river; secondly, under the act of June 4, 1872, the convenience of access to the bridge; third, the wants of railways and highways crossing the river.

So that I think that the language as used in the seventh and eighth sections must be considered as qualified by the language contained in the fifth section. And this will appear more manifest from the act of June 4, 1872. The view I was first inclined to take of that act was that it might be considered as only referring to acts that were subsequently to be passed by congress, authorizing the construction of bridges. It undoubtedly does so refer, and intended to declare that if congress should thereafter pass any act authorizing the construction of bridges upon the Mississippi river, the terms and conditions contained in the fifth section of the act of April 1, 1872, should be considered as applying.

But it is probable that congress had a still further object in the passage of this last act, inasmuch as the language contained in the seventh and eighth sections of the law of 1872 was general. They intended to make the case so clear in relation to any bridge that might thereafter be constructed as to remove all doubt upon the subject, and therefore said explicitly, that in relation to any bridge thereafter constructed the terms of the fifth section of the act of April should apply. And then the act of June 4th adds this clause to the previous part of the act, "that in locating the bridge the secretary of war shall have due regard to the security and convenience of navigation, to convenience of access, and to the wants of all railways and highways crossing the river;" rather, I think, as my brother judge has said, adding significance and point to the meaning of the term as used in the fifth section of the act of April, and showing that the secretary of war must exercise a discretion as to these particular matters in the location of the bridge.

One of the principal objects was to prevent the multiplicity of bridges, to have as few bridges as possible across this great river, and, therefore, to compel railways and highways which must make the transit of the river, and which were not widely separate, to use one bridge.

Now this is a great power undoubtedly, and affects immense interests, and the defendant feels, with some justice, perhaps, that it has been exercised in derogation of its own peculiar rights and privileges. But that was a matter for congress to determine.

The authority of congress over the river is manifest. It can exercise it against the interest of particular corporations or localities, and, as it is a legislative power, it is not for the judicial department of the government to interfere with it.

It is perhaps true that the secretary of war has only a negative upon the acts of the defendant, as to the construction of a bridge, and that he can only indirectly declare where the bridge shall be constructed. But that he has the right under these laws to say that the bridge shall not be constructed at a given point, because if constructed there it will interfere unnecessarily with the navigation of the river, and that there will not be due regard to the convenience of access, and to the wants of railways and highways crossing the river, we can have no doubt.

It may be difficult for us to understand as a matter of fact, looking upon this river in the light of the evidence, how it is that a bridge cannot be built anywhere else except at the foot of Mount Vernon street, between the counties of La Crosse and Houston, but still that is not a question for our consideration.

On the whole, therefore, we think, for the reasons stated, that it is competent for the United States to come into this court and ask that the defendant shall not be permitted to construct the bridge at the place proposed, because the secretary of war has indicated his disapprobation of that point. Technically, perhaps, his objection is not in such form as it should have been. But his disapprobation is apparent, and cannot be ignored by the court.

The injunction will therefore be ordered.

[The injunction was subsequently made perpetual. Case No. 15,779.]